**UNITED STATES of america,**

v.

**James KENT, a/k/a Lashon Kent a/k/a Bernard Bearfort James Kent, Appellant.**

**No. 02–3786.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 13, 2004.

Decided Jan. 30, 2004.

Maureen Barden, Office of United States Attorney, Philadelphia, PA, for Appellee.

Stephen J. Binhak, Huntingdon Valley, PA, for Appellant.

Before BARRY, SMITH, and GREENBERG, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Because we write only for the parties in this not precedential opinion, we will recite only those facts necessary to reach our decision. On February 5, 2002, appellant James Kent was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). After a two-day jury trial, Kent was convicted. The District Court sentenced Kent to 112 months' imprisonment, three years of supervised release, and a $100 special assessment. Kent filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and will affirm.

I.

Kent argues that the District Court committed reversible error when it misspoke on one occasion toward the end of the instructions to the jury. In describing the interstate commerce element of the offense, the Court stated, "[a]ll the *defendant* [sic] must show is that, at some point

prior to the defendant's possession of such firearm, the firearm was somewhere outside of the Commonwealth of Pennsylvania." (emphasis added). Kent contends that the District Court impermissibly shifted the burden of proof to him. Inasmuch as he did not object to this part of the jury instructions, we review for plain error. *See United States v. Brennan,* 326 F.3d 176, 182 (3d Cir.2003). Thus, he must show that the error was "plain" or "obvious," and that it affected his substantial rights. *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We will not exercise our discretion to correct the error unless that error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Gambone,* 314 F.3d 163, 182 (3d Cir.2003) (internal citations and quotations omitted). As we have noted, "it is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* (internal citations and quotations omitted).

■ We find that the challenged jury instruction, although certainly misstated by the District Court, did not constitute plain error. From the very outset of the trial, the Court informed the jury that the government bore the burden of proof. In its preliminary instructions, the Court stated that "the burden of proof is on the Government until the very end of the case," and that "the Government must prove the defendant's guilty [sic] beyond a reasonable doubt." (A16–17). In its instructions to the jury at the conclusion of the trial, the Court repeatedly emphasized that the burden of proof rests with the government:

> This presumption of innocence is a very important legal principle and it continues with the defendants, unless and until you find that the Government has

proved its case beyond a reasonable doubt, if you do so find.... The burden is always upon the Government to prove guilt beyond a reasonable doubt. The law does not impose any burden on a defendant and does not require a defendant to prove his or her innocence or to produce any evidence at all....

The Government must establish each of the elements of the offense with which a defendant is charge [sic] by proof beyond a reasonable doubt. And, unless the Government proves beyond a reasonable doubt that a defendant has committed every element of the offense with which he is charged, you must find him not guilty of that offense....

The Government has the burden of proving beyond a reasonable doubt not only that a crime was committed, but also that the defendant charged was the person who committed the crime.... Before any defendant may be found guilty of any of the crimes charged in the indictment, the Government must establish beyond a reasonable doubt that the defendant or defendants acted in a manner forbidden by the law as charged in the indictment and that he acted with the requisite state of mind when he committed those acts....

When instructing on the elements of the offense, the Court stated that "[i]n order to establish its burden of proof in this case, the Government must prove the following three elements beyond a reasonable doubt." (A305). Regarding the interstate commerce element, the Court instructed, immediately prior to the challenged sentence:

> That is to say, the Government may satisfy its burden as to this element by proving that the firearm passed from a state or country other than Pennsylvania to Pennsylvania sometime prior to

the time the defendant allegedly possessed it in Pennsylvania.

In addition to the statements of the District Court reminding the jury of the government's burden of proof, the Court provided each juror with a written copy of the instructions, which correctly stated: "All the *government* must show is that at some point prior to defendant's possession of such firearm the firearm was somewhere outside of the Commonwealth of Pennsylvania" (emphasis added). And, we note, the interstate commerce element had been stipulated to by the parties. We, therefore, do not find that the challenged instruction constituted plain error.

## II.

Kent contends, next, that the government failed to present sufficient evidence that he possessed the firearm, a .357 Smith & Wesson, in violation of 18 U.S.C. § 922(g)(1). We disagree.

■ At trial, four police officers testified that they witnessed Kent with a gun. Officer Ronald Szymborski stated that he saw Kent, who was approximately ten feet away from him, "pull[ ] a Smith & Wesson revolver out of his waistband and throw[ ] it overhand into a lot that's on the east side of the sidewalk." Szymborski went to the lot and saw "the handle of the gun hanging off a roof." He retrieved the gun, which was identified as a Smith & Wesson .357 revolver. Officer Orlando Ortiz also testified that he "observed James Kent throw a gun he had in his right hand. He threw it motioning over his head into a fenced-in lot. . . ." In addition, Officer Edwin Correa told the jury that he "saw Kent throw the gun in the lot." Finally, Officer Brian Cowden testified that he "observed Mr. Kent toss a gun in the air into the lot." Although Kent points to what he believes to be discrepancies in the testimony, under the "particularly deferential" standard of

viewing the evidence in the light most favorable to the government, we find that there was more than sufficient evidence to support the guilty verdict. *See United States v. Peppers*, 302 F.3d 120, 125 (3d Cir.2002).

## III.

Finally, Kent argues that during the sentencing hearing, the District Court impermissibly denied him an opportunity to raise factual objections to the pre-sentence investigation report ("PSI"). The version of Federal Rule of Criminal Procedure 32(c)(1) in effect at the time of sentencing provided that:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. . . . For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

■ The District Court satisfied the requirements of Rule 32. At sentencing, defense counsel objected to the criminal history category into which Kent was placed, an objection the Court considered and rejected. The Court then considered Kent's *pro se* motions, and ruled that "[t]o the extent he seeks a dismissal of the indictment, or a new trial, or an acquittal, all those motions are denied as without merit." After defense counsel requested that Kent be sentenced at the bottom of the guideline range, the following colloquy took place:

COURT: First, Mr. Kent, I want to ask you if you've read the presentence report?

KENT: Yes, sir.

COURT: Do you have any objections to the facts contained in the report?

KENT: Yes, I guess I'll have to deal with them on a later date though.

COURT: All right. This is now your opportunity to address the Court to advise me about anything that you think I should know about you and your situation before I pronounce sentence.

KENT: No, sir. A motion was sent. You should probably have it later on today. And, that's it, that's all I have to say.

COURT: Well, I—I did receive something from you, and that motion is denied.

KENT: Ineffective counsel?

COURT: Yes.

KENT: Okay

COURT: As of today, obviously that's without prejudice to your renewing it at some later time.

KENT: Okay

COURT: Anything further you wish to say -

KENT: No, sir (A329).

We simply cannot conclude that the District Court denied Kent the opportunity to object to the PSI. When Kent stated that he will "have to deal with [the factual objections] on a later date," the Court explicitly afforded him an opportunity to advise the Court of anything that Kent believed the Court should know and he declined the offer. After the Court denied Kent's motion based on ineffective assistance of counsel, it again asked Kent if he wished to say anything, and Kent replied, "No, sir."

## IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.